# In the United States Court of Federal Claims

Nos. 21-1174 & 21-1098 (consolidated)
Filed: July 30, 2021
Reissued: August 9, 2021[†]

---

MEDLINE INDUSTRIES, INC,

*Plaintiff,*

*and*

CONCORDANCE HEALTHCARE
SOLUTIONS, LLC,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant,*

CARDINAL HEALTH 200, LLC,

*Intervenor-Defendant,*

*and*

OWENS & MINOR DISTRIBUTION,
INC.,

*Intervenor-Defendant.*

---

*Kristen E. Ittig*, with *Stuart Turner*, *Nathaniel E. Castellano*, and *Aime JH Joo*, Arnold & Porter Kaye Scholer, LLP, Washington, D.C., for Plaintiff, Medline Industries, Inc.

*Aron C. Beezley*, with *Patrick R. Quigley*, *Lisa A. Markman*, *Nathaniel J. Greeson*, and *Sarah S. Osborne*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Plaintiff, Concordance Healthcare Solutions, LLC.

---

[†] This Opinion is reissued consistent with the Court's direction to the parties to propose redactions. The parties notified the Court that no redactions are necessary. (ECF No. 102). Therefore, the Opinion is reissued with minor corrections of typographical errors.

*Mollie Finnan*, Senior Trial Attorney, and *Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with *Jason Fragoso*, Department of Veterans Affairs, *Gale Furman*, and *Katherine McCulloch*, Defense Logistics Agency, Of Counsel, for Defendant, the United States of America.

*Merle M. DeLancey, Jr.*, Blank Rome LLP, Washington, D.C., for Intervenor-Defendant, Cardinal Health 200, LLC.

*Jonathan D. Shaffer*, Smith Pachter McWhorter PLC, Tysons Corner, VA, for Intervenor-Defendant, Owens & Minor Distribution, Inc.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

If there can be a literary analogy to this government procurement, it would be Longfellow's *The Wreck of the Hesperus* which chronicles a prideful sea captain's avoidable downfall on the rocks of Norman's Woe.[1] Like the experienced crew of the Hesperus, agency personnel warned of the perils of a plotted course and when ignored, "[d]own came the storm and smote amain, the vessel in her strength" leaving behind only a "dreary wreck" awash upon the shoals.[2]

This is a consolidated bid protest brought by Concordance Healthcare Solutions, LLC ("Concordance") and Medline Industries, Inc. ("Medline"). It is related to another protest brought by Owens & Minor Distribution, Inc. ("O&M"), in which Concordance intervened as a plaintiff. *O&M et al. v. United States et al.*, Case No. 21-1341. Both protests relate to the Department of Veterans Affairs' ("VA") procurements of medical and surgical supplies. The root of the controversy is the VA's attempt to transfer the requirements from its own procurement to existing contracts held by the Defense Logistics Agency ("DLA"). Although the United States has represented that the transfer is cancelled—a matter of some dispute—several issues remain.

## I.    Background

The factual and procedural background of this case is complex. In brief, the DLA awarded contracts for medical and surgical supplies in 2016. The VA made its awards for medical and surgical supply contracts in October 2020. After the VA's awards (or at least after bidding had closed), the VA announced that it was moving its requirements to the DLA. Under the transfer plan, DLA contractors would receive a windfall, essentially doubling the size of their existing Indefinite-Delivery Indefinite-Quantity ("IDIQ") contracts. The VA contractors would be left holding the bag, not knowing when or if the VA would terminate their contracts as the requirements transitioned. As if this were not chaotic enough, all the while, the VA undertook corrective action pursuant to protests at the Government Accountability Office ("GAO").

---

[1] Henry Wadsworth Longfellow, *The Wreck of the Hesperus*, The New World, Jan. 10, 1840.

[2] Sundry employees' concerns, both ethical and legal, are detailed below.

Subsequently, that corrective action, as well as the transfer and the VA procurement itself were challenged in this Court. Still, several offerors were compelled to submit revised bids for a "Schrödinger's procurement" with the VA.[3] Those offerors' proposals were due during the period they were challenging the scope and transfer of the VA contract, in addition to challenging the corrective action, in this Court.

The United States (successfully) fought against temporary and preliminary injunctive relief. But when presented with opening briefs from Medline and Concordance detailing the agency record, the United States sought to secure partial remand without explicitly confessing error (also, a matter of some dispute) by spinning off several claims into a new case while refusing to stay agency action. That request added bedlam to already existing chaos. Ultimately, the Court denied the request for remand. The matter is now fully briefed. Having provided the landscape, additional details are necessary to resolve the remaining legal issues.

### A. The DLA and VA MSPV programs

The DLA and VA both procure medical and surgical supplies through "Medical Surgical Prime Vendor" ("MSPV") programs. (VA AR 3168).[4] The MSPV programs were intended to leverage the buying power of the Federal Government. Rather than procuring supplies off the General Services Administration's Federal Supply Schedule, the MSPV programs standardize the list of items the agencies can procure, increasing consistency, lowering costs, and simplifying the supply chain. (VA AR 3110). Each of these goals is laudable. The DLA started its MSPV program in 1995, and the VA started its program in 2005. (VA AR 3168, 3174). The DLA MSPV program encompasses "three Global Regions (North, South, and West) that combine to provide routine ordering capability and contingency and disaster support as required, throughout the world." (DLA AR 3003). The VA MSPV program at issue in this case divides over 1,200 health care facilities into eighteen[5] geographic regions across the United States and its territories.

---

[3] See S.E.H. v. Sec'y of Health & Hum. Servs., No. 15-260V, 2018 WL 6920509, at *66 n.108 (Fed. Cl. Dec. 20, 2018) (describing Erwin Schrödinger's popular quantum mechanics theory).

[4] There are two Administrative Records in this case—one each from the VA and DLA. They are extensive and contain multiple volumes. (See ECF Nos. 28–35, 46 (consent motion to correct and supplement), 51–53 (additional tabs)). The records are stamped with a page number in the bottom righthand corner. The first page of the VA record is stamped "AR 1" and continues through "AR 4307." The first page of the DLA record is stamped "AR 3000" and the record is erratically paginated. Additionally, the United States filed supplements to each record, electing to replace some defunct pages entirely and, at other times, adding non-integral numbering. Some page numbers are duplicated in the supplements. Erroneous record citations may be attributable to any one of these defects. In any event, to refer to each record, the Court will cite the agency and that page number. For example, the first page of the DLA record is cited "(DLA AR 3000)." If the document may be found in a supplement, the Court will denote that location with "Supp."

[5] Confusingly, these are numbered VISN 1–23. There is no VISN 3, 11, 13, 14, or 18.

(VA AR 216, 231). These geographic regions are called Veteran Integrated Service Networks ("VISNs"). (VA AR 177).

On May 31, 2016, the DLA issued Solicitation No. SPE2DS-16-R-0001 for its MSPV contracts. (DLA AR 3000). The solicitation contemplated indefinite-delivery indefinite-quantity contracts for a 30-month base period with three 30-month option periods—potentially a ten-year contract. (DLA AR 3003). On April 12, 2017, the DLA awarded contracts to Cardinal Health 200, LLC ("Cardinal") and O&M. (DLA AR 3358, 3415). The DLA MSPV contracts were rolled out in June 2017 for all three regions. (DLA AR 3360, 3417). Together, inclusive of options periods, these awards total over $13 billion. (DLA AR 3360, 3417). Cardinal and O&M continue to perform under this contract.

In December 2016, the VA launched its "Next Generation" MSPV program, which it dubbed "MSPV-NG." (VA AR 3168). The contracts awarded under MSPV-NG have since been replaced by a series of bridge contracts held by Medline, Concordance, Cardinal Health, and O&M. (VA AR 3173–75, 3371–72). The VA is currently attempting to transition to a new iteration of the VA's MSPV program known as "MSPV 2.0." MSPV 2.0 seeks to improve item standardization, cost savings, and clinician involvement while increasing the number of items available to participating facilities. (VA AR 3174). On September 27, 2019, the VA issued Solicitation No. 36C10G-19-R-0050 for its MSPV 2.0 contracts. (VA AR 1). This solicitation includes a three-year base period and two three-year option periods. (VA AR 265). It also allowed offerors to submit proposals as either a Primary Prime Vendor or an Alternate Prime Vendor. (VA AR 185). In October 2020, the VA announced contract awards to Medline and Cardinal. (VA AR 1527–31). Together, inclusive of options periods, these awards total over $10 billion. (VA AR 1527–32).

### B. VA's MSPV Pilot Program and Initial VISN Transfers to DLA

While the VA was readying to field offers for its MSPV 2.0 program, it was simultaneously exploring other avenues to procure those requirements, including through a pilot program with the DLA. (VA AR 3168). The VA MSPV program has endured several iterations—including "Legacy MSPV," "MSPV-NG," and now "MSPV 2.0"—and the program has been historically plagued by various deficiencies. (*See* VA AR 3174 (timeline of VA MSPV programs and outcomes), 3178 ("VA's implementation of the MSPV-NG program is not fully meeting the needs of its medical centers. . . . VA's plans for the MSPV 2.0 program address some of the problems with the current MSPV-NG program, but VA's plans do not address others or only partially address them.")).

Enter, the DLA's MSPV program—dubbed "Gen V" in its current iteration—which the VA saw "as a possible alternative to its MSPV program[.]" (DLA AR 3000; VA AR 3168). In March 2019, the VA sought to implement a pilot program at the Captain James A. Lovell Federal Health Care Center (FHCC) in North Chicago, a joint medical center already serving both VA and DLA. (VA AR 3196). Through the pilot program, VA medical centers would use DLA supply catalogs and place orders through DLA software systems. (VA AR 3196). However, these plans were delayed and ultimately scuttled by "technical integration issues." (VA AR 3198). Undeterred, the VA sought to relaunch the pilot program. "Pilot sites include[d] VISN 20 [encompassing the Pacific Northwest] and the Captain James A. Lovell Federal Health Care

Center (FHCC) in North Chicago, Illinois." (VA Supp. AR 4065). In a strategy memo, the VA suggested that the MSPV 2.0 program would provide product sourcing for medical centers while the VA explored a transition to the DLA by 2025. (VA AR 4063). That transition began July 15, 2020. (DLA AR 3771). But even in the early stages of exploring that option, VA officials expressed apprehension. As early as May 1, 2019, the Executive Director of Procurement for the Veterans Health Administration, a component of the VA, voiced three very specific concerns:

> (1) "Not sure how we get off the hook by just non-competitively giving the workload to [Department of Defense ("DoD")] contractors that were previously awarded [sic] without any VA requirements, which also brings to bear the scope issue . . .."

> (2) "The lawyers will need to further comment, but the proposition that you can take a non-compliant contract that was awarded two years ago by another agency and non-competitively add VA's requirements and then make the contract itself legally viable by overlaying a VA process that gives some preference to veterans at the **subcontractor** level seems very flawed."

> (3) "Final comment is that I don't believe we are doing the Secretary or anyone else any favors by moving forward with a process that will result in the VA losing in Federal court and then having to implement emergency procedures just to keep the doors of the hospitals open."

(VA AR 3490 (emphasis in original)).[6]

In August 2019, the Secretary of VA approved a partnership with DLA to expand on the pilot at the Lovell FHCC. (DLA AR 8545). Shortly thereafter, VA entered a Memorandum of Agreement with DLA to memorialize the strategic partnership and provide an umbrella for future Interagency Agreements. (DLA AR 8546). In September 2019, the two agencies entered an Interagency Agreement "to define the terms, conditions and responsibilities of DLA and VA to enable VISN 20 and The Captain James A. Lovell Federal Health Care Center (FHCC) facilities to leverage DLA's medical logistics capabilities." (DLA AR 8549). The agreement kicked off the pilot program for the second time. (DLA AR 8549). During an October 2019 meeting, VA and DLA officials discussed efforts to integrate the two agencies' MSPV programs and agreed that the "VISN 20 pilot [would] be a determining factor for [the] path forward on continued partnership[.]" (DLA AR 8594).

In July 2020, one of the MSPV-NG contractors "decided not to fully support the VA's MSPV Program" and was terminated as the Primary Prime Vendor for six VISNs along the eastern seaboard. (DLA AR 3719). This termination caused the VA to ask whether the DLA could support those six VISNs through the DLA's Gen V contracts (the 2016 awards). (DLA AR 3719). DLA was hesitant to absorb those VISNs and, in an August 11, 2020 meeting, acknowledged the logistical challenges of a rapid transition. (DLA AR 3718–23). Nevertheless,

---

[6] The record is replete with warnings and challenges raised by VA and DLA officials. The Court could fill several pages with similar examples, but has merely chosen a sample in the interest of brevity.

the VA pushed the DLA to develop a plan for a twelve-month transition of the six VISNs. (DLA AR 5196–5208). The DLA's concerns were well documented. Broadly, the DLA acknowledged that such a rapid transition "presents several significant challenges and risks that may impede implementation and cause gaps in coverage[.]" (DLA AR 5197). DLA was aware that officials within the VA had "ethical concerns" with awarding MSPV 2.0 contracts while VA planned to transition those requirements to DLA in the near term. (DLA AR 5197, 5205, 5209). DLA was also concerned that the two agencies had never attempted to transfer an entire VISN, only individual facilities, and were worried about transitioning six VISNs in rapid succession. (DLA AR 5198). On top of that, the transition for four of the VISNs would involve a change in vendors, from Concordance and Medline to Cardinal and O&M. (DLA AR 5199). O&M was not a VA vendor at the time, and DLA warned that such a transition may present "unknown challenges[.]" (DLA AR 5198). And the DLA Gen V contractors (Cardinal and O&M) were not aware of the potential for a vast increase in scope and volume of their contracts presented by a transition. (DLA AR 5205).

In August of 2020, DLA and VA officials met to discuss the transfer. (DLA AR 5209). Minutes from the meeting reiterates the DLA's grave concerns with the VA's plans. First, the VA's Strategic Acquisition Center ("SAC") "noted ethical problems with awarding [MSPV 2.0] contract[s] with [the] intention of shortly thereafter terminating [them]—[a] nonstarter[.]" (DLA AR 5209 (emphasis in original)). Second, the proposed transition plan included the simultaneous rollouts of VISNs 1 & 8 in order to meet the expiration of the MSPV-NG bridge contracts—that rollout would start *before* the MSPV 2.0 award. (DLA AR 5204). Ethical concerns aside, the DLA noted that rolling out two VISNs simultaneously was "unrealistic[.]" (DLA AR 5209). Third, the DLA noted that the VISN 20 pilot was already behind schedule; that delay bore on how many VISNs the DLA would be able to absorb in the near term. (DLA AR 5209). Finally, the DLA minutes quote the VA's SAC Contracting Officer as acknowledging that the VA "cannot ethically award a [MSPV] 2.0 vendor to ANY VISN that VA knowingly plans to transition to DLA in the near term."[7] (DLA AR 5209 (capitalization in original)).

Seemingly unfazed by the DLA's concerns, the VA asked DLA to prepare a plan to immediately transition the *entire* VA MSPV program to DLA. On September 18, 2020, the DLA presented its plan to the VA. (DLA AR 3767–85). The plan contemplated an accelerating schedule for each VISN transfer and a *completed* transfer of all eighteen VISNs to the DLA by June 30, 2024. (DLA AR 3783). DLA personnel were not enthusiastic about the potential for success, describing the proposal in terms such as "crazy" and "wild stuff!" (DLA AR 3786).

Amidst discussions regarding a transfer to DLA, the GAO delivered a report to Congress in September 2020. (VA AR 3168–3208). In the report, the GAO examined the VA's MSPV program and the pilot through DLA, finding serious flaws in both. (VA AR 3168–3208). With respect to the pilot program, the GAO found:

> VA has not defined criteria for assessing the pilot's success, has not canvassed widely for internal stakeholder input, and has not generated written guidance on Veterans First opportunities in the pilot. Consequently, VA

---

[7] "Near term" appears to mean within 24 months of an MSPV 2.0 award. (DLA AR 5209).

leadership will lack critical information to assess the pilot's success and to make an informed decision on its scalability to other medical centers.

(VA AR 3209; *see also* VA AR 3201 ("VA has not established criteria to determine whether the results of the DLA MSPV pilot can be scalable to other VA medical centers.")).

Resolute, on October 20, 2020, the VA formally requested that the DLA integrate the VA's MSPV requirements "enterprise wide in 18 months." (DLA AR 5430). At that time, the VA was still acknowledging several challenges, including that VA had not finished planning the transition, the DLA contractors had not been notified of the increased demands that were soon to flow, and most notably, that it was "[u]nclear if DLA [could] accommodate [the] accelerated pace of implementation[.]" (DLA AR 5437). Regardless, in mid-December of 2020, the VA and DLA entered into a second Interagency Agreement. (DLA AR 3484).

On February 26, 2021, personnel from the VA and DLA (and a private consulting firm) met via videoconference to discuss the collaboration. (DLA AR 7127). Internal correspondence between DLA personnel reveals communication issues within the VA, with several people on the call unaware that the transition was already underway. (DLA AR 7124 ("there were some people in the meeting yesterday that didn't even know VISN 20 was almost rolled out and I didn't dare say [the DLA is] working on VISN 6.")).

In March 2021, the DLA and VA prepared the transition plan. (VA AR 1735–70). This plan contemplated that MSPV 2.0 would go live on March 31, 2022. (VA AR 1736). It also proposed that the vendors for 40 VA facilities would have their MSPV 2.0 contracts terminated within twelve months—by March 31, 2022. (VA AR 1736). Despite the DLA official's concern that transition of more than *two* VISNs simultaneously was "unrealistic," (DLA AR 5209), the two agencies planned to transition *as many as six VISNs at the same time*. (VA AR 1708 (showing VISN 6, 10, 12, 7, 5, and 23 all transitioning in July 2021)). VA legal officials also communicated their doubts to the DLA regarding whether the plan complied with the Competition in Contracting Act ("CICA"). (DLA AR 7819 ("It was pretty clear the VA's [Office of General Counsel] does not agree [the VA is] CICA compliant[.]")). On March 9, 2021, the DLA formally notified VA contractors that its Gen V contractors would be taking over all servicing responsibilities by September 2023. (Am. Compl. Ex. 2, ECF No. 38-2). On March 30, 2021, the VA seemingly updated this timeline, indicating to Concordance that the transition would be complete by June 2022. (Am. Compl. Ex. 9).

By April 2021, challenges from the partnership began to manifest. For example, in VISN 20—where the pilot facilities were located.—80% of DLA orders were not delivered. (VA AR 4079). VA learned that these undelivered orders stemmed from a mismatch in payment and delivery schedules. In other words, VA facilities paid the DLA upon placing the orders, leaving DLA with little incentive to follow up to make sure the orders were actually delivered to the requesting facility. (VA AR 4246–47). This problem was "not unique to VISN 20," those facilities were "just the first to experience the transition" and thus were "the first in the chute[.]" (VA AR 4078).

### C.  Protests at the GAO and VA

Meanwhile, throughout early 2021, MSPV 2.0 has been the subject of numerous protests at the GAO and the VA. (VA AR 1567–1601). O&M challenged the VA's decision to make primary awards to Medline and Cardinal rather than O&M for all contract line items ("CLINs") on which O&M had been included in the competitive range. (VA AR 1585–96). O&M challenged the VA's evaluation of O&M's technical approach, veteran involvement, and some aspects of the VA's evaluation of Medline's pricing. (VA AR 1588). That protest was denied. (VA AR 1585–95).

Concordance protested the VA's decision to make primary awards to Medline rather than Concordance for seven of the eight CLINs on which Concordance had been determined competitive. (VA AR 1596–1601). On January 7, 2021, the VA submitted to the GAO a notice of corrective action and request for dismissal. (VA AR 1596–97). The VA proposed four terms of corrective action: (1) re-opening price discussions with Medline and Concordance for several prime vendor awards; (2) using the new evaluation after proposal revisions and discussion to execute a new responsibility pre-award determination; (3) notifying the parties of the decision; and (4) allowing post-award debriefing. (VA AR 1597). In essence, the VA agreed to take corrective action with respect to the seven challenged awards, reopening price discussions for those VISNs. (VA Supp. AR 4087). The VA concluded that "[t]he proposed corrective action renders the current protest academic[.]" (VA AR 1597). On February 3, 2021, the GAO dismissed Concordance's protest. (VA AR 1598–99). The VA provided Concordance with the opportunity to revise its Primary Prime Vendor price proposals for VISNs 1, 2, 9, 10, 12, 15, and 23. (VA Supp. AR 4087).

After the GAO's dismissal, Concordance filed three agency-level protests with the VA. (VA AR 3379, 3386). These protests—filed January 15, March 5, and April 5, 2021—raised a litany of issues, none of which are particularly relevant to the instant litigation. (VA AR 3379–85). Each was dismissed or denied. (VA AR 3385, 3386).

### D.  Court Proceedings

On March 22, 2021—while the first two VA-level protests were pending, but before the third was filed—Concordance filed its original Complaint in Case No. 21-1098. Medline filed its original Complaint on April 8, 2021, docketed in Case No. 21-1174. (Medline Compl., ECF No. 1). On April 26, 2021, the Court consolidated the two protests under Case No. 21-1174 and granted leave for Concordance to file an Amended Complaint in this action. (Case No. 21-1098, ECF No. 43). Concordance filed its Amended Complaint on April 27, 2021. (Am. Compl., ECF No. 38). O&M and Cardinal intervened as defendants. (ECF Nos. 17, 19).

Medline's six-count Complaint challenges the planned transfer on various grounds and includes a claim that the VA breached an implied-in-fact contract to fairly consider Medline's MSPV 2.0 proposal. Specifically, with respect to the transfer, Medline alleges that (1) the interagency acquisition violates the Economy Act and FAR Subpart 17.5; (2) DLA's award of the VA's MSPV requirements violate CICA and FAR Part 6; (3) shifting the VA's MSPV requirements to the DLA's MSPV contracts results in an out-of-scope modification to the DLA MSPV contracts in violation of CICA; (4) the VA's decision to transfer its MSPV requirements

to DLA before completing its pilot program is arbitrary and capricious and contrary to FAR § 1.602-2; and (5) the scope of the VA's corrective action in response to Concordance's GAO protest is arbitrary and capricious and contrary to FAR § 1.602-2. (Medline Compl.). Medline seeks declaratory, injunctive, and monetary relief. (*Id.* at 32).

Concordance's seven-count Amended Complaint challenges not only the planned transfer, (and includes a claim for breach of implied-in-fact contract), but also challenges the terms and scope of the MSPV 2.0 solicitation. Notably, the key difference between the Medline and Concordance complaints is Concordance's fifth Count.[8] (Am. Compl. at ¶¶ 87–94 (hereinafter Concordance's "Scope Claim")). Concordance's Scope Claim alleges that the VA solicitation announced a nine-year period of performance, inclusive of options. (Am. Compl. at ¶ 88). This performance period was scheduled to begin April 1, 2020. (*Id.*). Concordance alleges that it relied on this scope and performance period when it prepared its proposal, but now, the VA has announced that the MSPV 2.0 program will be discontinued by June 2022—before the base period was scheduled to expire. (*Id.* at ¶ 89). Concordance alleges that the VA announced this policy change on March 30, 2021, as it had previously communicated that MSPV 2.0 would phase out by September 2023. (*Id.* at ¶ 90). Concordance alleges that this constitutes a material change in requirements, and thus under FAR § 15.206, the contracting officer is required to amend the MSPV 2.0 solicitation. (*Id.* at ¶¶ 91–93). Concordance offers the following succinct summary of their claim:

> The VA has now unequivocally represented that the MSPV 2.0 Solicitation is not intended for the originally solicited period of performance, scope of work, or monetary value. The new period of performance has been reduced from nine years to less than two years, the scope of work is extremely diminished, and the value of the solicited requirement is a fraction of its former value . . .. These changes obviously are "so substantial as to exceed what prospective offerors reasonably could have anticipated" and the VA must cancel, rescope, and resolicit its true, changed requirement for its MSPV 2.0 Program.

(Am. Compl. ¶ 94 (quoting FAR § 15.206)).

While this consolidated case has been pending, the VA has refused to issue a voluntary stay of either the MSPV 2.0 procurement or the planned transfer to DLA. (Notice of Procurement Activity, ECF No. 43).[9] On April 28, 2021, Concordance filed a Motion for

---

[8] Concordance's Amended Complaint is erroneously numbered. The fifth Count, paragraphs 84–94, is titled "Count VI." Therefore, to prevent confusion, the Court will refer to this key count as Concordance's "Scope Claim."

[9] While protests were pending before the GAO, the automatic statutory stay was in effect. FAR § 33.103(f)(3). While Concordance's protests were pending in front of the VA, the VA represented that it had elected to continue that stay. (ECF No. 40-3 (email from the VA representing that

Preliminary Injunction, seeking a narrow injunction related to the Scope Claim. (Mot. for PI, ECF No. 40). On May 6, 2021, before briefing on the Motion for Preliminary Injunction was complete, Concordance filed a Motion for a Temporary Restraining Order. (Mot. for TRO, ECF No. 49). Concordance insisted that its motion for emergency relief became necessary after the United States filed a Notice of Procurement activity on May 4, 2021. (Mot. for TRO at 2). That Notice stated that the VA intended to proceed with MSPV 2.0 procurement activity and requested revised price proposals related to its corrective action before briefing on the Motion for Preliminary Injunction would be complete. (Notice of Procurement Activity at 1).

While Concordance's Motion for Preliminary Injunction sought to enjoin a final award of MSPV 2.0 contracts, its Motion for a TRO sought to enjoin the VA's attempt to move forward with corrective action. (Mot. for TRO at 11). In other words, Concordance's Motion for a TRO sought to enjoin the VA's May 12 deadline for Concordance and Medline to submit revised price proposals. After a hearing, the Court denied both of Concordance's motions, each time finding that the likelihood of irreparable harm was low, weighing against emergency or temporary injunctive relief. (ECF Nos. 59, 67). The Court made clear that "[i]f in fact the changes to MSPV 2.0 requirements are so substantial as to violate federal procurement law, as argued by Concordance, the Court may order permanent injunctive relief when addressing the merits." (ECF No. 67).

Somewhat surprisingly, Intervenor-Defendant O&M filed briefs in support of Plaintiff Concordance's motions for emergency and preliminary relief. (ECF Nos. 55, 60). Plaintiff Medline opposed both motions. (ECF Nos. 54, 61). After resolution of those motions, Medline and Concordance each filed its Motion for Judgment on the Administrative Record. (Medline MJAR, ECF No. 63; Concordance MJAR, ECF No. 64).

Meanwhile, O&M commenced a third protest on May 11, 2021. *O&M et al. v. United States et al.*, Case No. 21-1341. In that action, Concordance intervened as a plaintiff, Medline and Cardinal intervened as defendants. O&M and the United States jointly moved to consolidate, but the Court rejected that request. (Case No. 21-1341, ECF No. 13). O&M challenged the scope of corrective action seeking to be included in MSPV 2.0 price discussions with Medline and Concordance. (O&M Compl. at ¶¶ 42–47 (Count I), Case No. 21-1341, ECF No. 1). O&M also raised a FAR § 15.206 challenge that mirrors Concordance's Scope Claim. (*Id*. at ¶¶ 48–58 (Count II)). Concordance and O&M each filed its Motion for Judgment on the Administrative Record on May 27, 2021. (ECF No. 47, 49).

The next day, on May 28, the United States filed motions for voluntary remand in *O&M et al.* and in this case. *See Owens & Minor Distribution, Inc. v. United States*, No. 21-1341, 2021 WL 2549413 (Fed. Cl. June 22, 2021). With those motions, the United States sought to remand parts of each protest, while avoiding confessing error, staying relevant agency actions, or pausing litigation. *See generally*, *id*. The parties took varying and splintered positions on that request, but they need not be rehashed here. Notably, despite a judicial admission that the Administrative

"[t]he current stay of performance will remain in effect until the pending agency protest is decided.")). On April 19, 2021, when the VA dismissed Concordance's agency level protest, that stay apparently dissolved.

Record lacked support for the transfer decision, the United States tried to hedge that admission in its Cross-MJAR, arguing that it had not confessed error. *Id*. at *3. After a hearing, a joint status report, and full briefing on the motions to remand, the Court denied those motions for remand finding that "[t]he agency has not provided a compelling justification for remand, the need for finality dominates the United States' interest in a remand, and the scope of the proposed remand is inappropriate." *Id*. at *6.

Consequently, the parties proceeded to brief all merits issues in both this case and *O&M et al*. That briefing is now complete and, as Concordance has appropriately commented, it is time for all parties to face the music.

## II.     Analysis

The most appropriate place to begin is the VA's proposed transfer of its MSPV requirements to DLA. That transfer is arbitrary and capricious and unsupported by the administrative record. Concordance has demonstrated that it is entitled to a permanent injunction that prohibits the VA and DLA from completing any transfer of MSPV requirements on this record. However, the scope of the Court's injunction should be read as narrowly as it is intended—that is, the Court offers no opinion as to whether a future transfer of MSPV requirements to DLA would be lawful or supported by another administrative record. Such a decision on any future transfer is within the ambit of agency policymaking and must stand or fall on its own merits.

The second issue is the scope of the MSPV 2.0 solicitation. It is evident that, notwithstanding that the transfer to DLA can no longer proceed, the VA's requirements have materially changed since the MSPV 2.0 solicitation was conceived. Concordance has sufficiently demonstrated standing to bring a challenge to the entire solicitation and is therefore entitled to an injunction that enjoins the VA from making a final award under the solicitation as it currently stands. Additionally, the Court finds that Concordance did not waive its right to challenge that solicitation.

The third issue is whether the VA breached its implied contract with offerors to fairly consider their proposals. Concordance seeks to recover bid preparation and proposal costs because, it alleges, the VA breached its implied-in-fact contract to consider MSPV 2.0 proposals "fairly, honestly, and in good faith." (Concordance MJAR at 35, ECF No. 64-1). The Court agrees that the VA's decision to pursue a transfer of MSPV requirements to the DLA was arbitrary and capricious. Therefore, Concordance is entitled to recover bid preparation and proposal costs. The Court will explain each of these holdings in greater detail below.

> *A.  The VA's decision to transfer its MSPV requirements to the DLA is unlawful and must be set aside under the Administrative Procedure Act.*

According to 28 U.S.C. § 1491(b)(4), the Court reviews agency procurement decisions under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Under the APA standard, "[i]n a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial." *Glenn Def. Marine (ASIA), PTE Ltd. v. United States*, 720 F.3d 901, 907 (Fed. Cir. 2013). Thus,

11

judicial review of agency action under the APA proceeds on two tracks: (1) the Court might find that the agency's decision lacked either a rational basis or support from the administrative record or was arbitrary and capricious; and/or (2) the Court could find the agency's procurement procedure involved a violation of regulation or statute. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009). To obtain relief, even if the protestor shows that the procuring agency violated the law, it must also show that the agency's violation was prejudicial to the protestor. *Glenn Def. Marine*, 720 F.3d at 907.

Medline argues that adding the VA's MSPV program to DLA Gen V contracts without further competition would constitute an out-of-scope modification to the DLA contracts in violation of CICA. (Medline MJAR at 17, ECF No. 63-1). Medline also argues that the VA's decision to immediately transfer VA MSPV requirements to DLA lacks a rational basis, and violates FAR § 1.602-2. (*Id*. at 28). Finally, Medline argues that FAR § 17.5 required the agencies to prepare a "determination and finding" ("D&F") to support the transfer of interagency requirements, but the VA failed to do so. (*Id*. at 33). In summary, Medline argues that on both tracks, the VA's actions fail to survive judicial scrutiny under the APA.

Like Medline, Concordance argues that adding the VA's scope of work to the DLA's Gen V contracts constitutes an out-of-scope modification that is contrary to law. (Concordance MJAR at 8). Similarly, Concordance alleges that the VA failed to comply with the requirements of FAR § 17.5 and two statutes governing agency sharing authority. (*Id*. at 22). Furthermore, Concordance argues that the VA's decision to cancel or abridge its MSPV contract awards due to the transfer is arbitrary and capricious and violates FAR §1.602-2. (*Id*. at 33).

The United States has offered no defense on the merits of these challenges as to whether the transfer violates CICA and the FAR, and has conceded that the Administrative Record lacks support for the transfer:

> **The Court**: So just to be clear, the United States is making a judicial admission today, a binding judicial admission, that if we move forward, if the remand is not granted, the United States will not defend against the claim that the transfer to DLA is unlawful?

> **[The United States]**: We are conceding that there is not adequate support in the record. . . .  We are recognizing that part of this Courts standard of review is whether there is a rational basis for an agency's action reflected in the record. That rational basis is not there.

(Tr. of Oral Arg. at 19:10–25, ECF No. 81). That admission permits the Court to issue a narrowly tailored ruling: *this transfer plan* is unsupported by the Administrative Record and therefore *this transfer plan* is in contravention of the APA and is therefore unlawful. While the Court could address the issue as to whether the proposed transfer would constitute a violation of CICA or the FAR, it need not do so given the United States' acknowledgement that the record does not provide a basis upon which the agency action could be upheld.

   *B.   The VA's current requirements are not reflected in the MSPV 2.0 solicitation.*

   As illustrated above, many of Concordance's arguments mirror those of Medline. Where the parties diverge, however, is whether the MSPV 2.0 solicitation must be rescoped to reflect the current needs of the VA (*i.e.*, Concordance's Scope Claim). Concordance argues that the current MSPV 2.0 solicitation violates FAR § 15.206, and thus the VA must be enjoined from issuing awards. (Concordance MJAR at 30). Concordance prays that the Court direct the VA to rescope and resolicit its MSPV 2.0 requirements. (*Id.* at 33).[10]

   The United States filed its Cross-Motion for Judgment on the Administrative Record after its admissions that the transfer lacked support in the current record. (USA xMJAR, ECF No. 84 (filed June 8, 2021; the United States made its concession during a June 4 hearing)). Much of that brief is dedicated to seeking a remand so that the VA *might* reconsider its charted course. (*E.g.*, USA xMJAR at 17–25 (arguing that the Court should grant a voluntary remand and partially stay this litigation), 25–30 (arguing that remand, not injunctive relief, is the appropriate remedy)). The United States contends that its concessions moot the claims brought by Concordance and Medline, including Concordance's Scope Claim. (USA xMJAR at 23–24). That position without support in fact or law. Tellingly, United States *does not argue* that the VA's MSPV 2.0 solicitation reflects its current needs. Aside from positing that the United States' concessions somehow render this controversy academic, the United States only argues that Concordance cannot demonstrate a *prejudicial* violation of FAR § 15.206. (*Id.* at 26). Medline, too, makes this prejudice argument, which the Court will address below.

   Cardinal picks up some of the slack, arguing that FAR § 15.206 does not apply because it does not require amendment to solicitations for which agency requirements change *after* an award. (Cardinal xMJAR at 8, ECF No. 83-1). However, this argument confuses the time at which Concordance brought its challenge with the point at which agency requirements changed. The VA made an award decision in October 2020. (VA AR 1527–31). Its decision to proceed with an interagency transfer that would alter the MSPV 2.0 solicitation requirements predated those awards. (*E.g.*, DLA AR 3767–3785 (DLA's Sept. 18, 2020 presentation regarding the upcoming transfer)). Additionally, as a matter of law, this is a pre-award protest. The VA's award decision has been made but not finalized as it remains subject to corrective action. (VA Supp. AR 4087). That places this case in the posture of a pre-award protest. *Jordan Pond Co., LLC v. United States*, 115 Fed. Cl. 623, 630 (2014) ("In the circumstances of a pre-award protest where, as here, an award decision has been made but not finalized . . ..") (citing *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348–49 (Fed. Cir. 2013)). Under FAR § 9.103(b), until a responsibility decision is made, "the agency should not consider this procurement as being in the 'after contract award' stage for purposes of interpreting the FAR and [agency] regulations. The agency should interpret these regulations as applying to a pre-award circumstance[.]" *Chapman L. Firm Co. v. United States*, 71 Fed. Cl. 124, 134 (2006), *aff'd in part, rev'd in part and remanded sub nom. Chapman L. Firm Co. v. Greenleaf Const. Co.*, 490 F.3d 934 (Fed. Cir. 2007). The VA has not made a responsibility determination for the MSPV 2.0 procurement. (VA

---

[10] The Court notes that its authority here is constrained by the APA, which only allows the Court to review and set aside agency actions. 5 U.S.C. § 706. Both Concordance and Medline seek injunctive relief that exceeds those constraints.

AR 1597; USA xMJAR at 8). Therefore, Cardinal's argument, which is premised on its suggestion that this case is in a post-award posture, lacks merit.

Medline, apparently assured that the transfer to DLA is unlikely to proceed, now seeks to protect its status as a putative awardee of MSPV 2.0 contracts, subject to the limited corrective action. With that backdrop, in its Reply brief, Medline argues that (1) the MSPV 2.0 solicitation does not violate FAR § 15.206 because it appropriately reflects the scope of current VA requirements; (2) Concordance's Scope Claim is untimely; and (3) Concordance cannot demonstrate competitive prejudice. (Medline Reply at 20–24, ECF No. 90). The Court will address each of these arguments in turn.

> i.  The scope of the MSPV 2.0 Solicitation does not reflect the VA's current requirements and thus violates FAR § 15.206.

FAR § 15.206 provides that "[w]hen, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer *shall* amend the solicitation." FAR § 15.206(a) (emphasis added). That section further provides that if the change in requirements is so substantial that it would exceed the reasonable expectations of the offerors, a new solicitation is required:

> If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

FAR § 15.206(e). "The time of delivery or performance is an essential contract element and shall be clearly stated in solicitations. Contracting officers shall ensure that delivery or performance schedules are realistic and meet the requirements of the acquisition." FAR § 11.401(a). Both the period of performance and delivery date are key terms of any contract. *See, e.g.*, *MSC Indus. Direct Co. v. United States*, 126 Fed. Cl. 525, 533 (2016) ("A discrepancy as significant as the delivery date is more than sufficient to warrant an amendment to the solicitation.").

Medline's first argument is that Concordance's challenge to the MSPV 2.0 solicitation rests entirely on the assumption that the VA would immediately transfer its MSPV requirements to the DLA, and if the transfer is no longer proceeding, then the MSPV 2.0 requirements have not changed since the solicitation was issued in September 2019. (Medline Reply at 20–21). Even putting aside the fact that the MSPV 2.0 solicitation *still* lists the start of the performance period as April 30, 2020, (VA AR 4), Medline's argument would require the Court to suspend reality to create a legal fiction. The VA's requirements have necessarily changed throughout the course of the transfer planning and amendments to the timeline. Those requirements might have changed when the VA decided to pursue the transfer to DLA in the first place—on a timeline through 2025. (VA AR 4063). The VA's requirements might have changed when it accelerated the transfer to conclude by September 2023—a plan that already conceived of transferring several VISNs away from VA contractors while MSPV 2.0 awardees were still performing on

the base period of the contract. (Am. Compl. Ex. 2; VA AR 1708 (showing VISNs 5, 6, 7, 8, 10, 12, 15, and 23 all commencing transfers *before MSPV 2.0 was even scheduled to go live*)). However, it strains credulity to think that the VA's requirements did not change when it further accelerated that transfer to conclude by June 2022. (Am. Compl. Ex. 9). With each passing day, the VA's MSPV 2.0 requirements change as it attempts to transition VISN 6 to DLA despite its counsel conceding the unlawfulness of that agency action. (*See* USA xMJAR at 13 (explaining that the VISN 6 transfer to DLA is currently proceeding)). VISN 20 has already been transferred as part of the pilot program—that transfer is nearly complete—yet VISN 20 *still* appears in the MSPV 2.0 solicitation, albeit as an optional CLIN. (*Id*. at 13; VA AR 216). Likewise, VISN 6 is also still part of the MSPV 2.0 solicitation. (VA AR 216). Now, with the Court's injunction, *nobody* can be certain what the VA requires or on what timeline. Perhaps that is why the United States has resisted making the argument that the solicitation remains accurate. But it is clear that whatever the VA required in September 2019, those requirements have certainly changed after nearly two years of administrative challenges, corrective action, changes in agency policy, a partial transition, and a gauntlet of litigation.

Medline also argues that because MSPV 2.0 contemplated IDIQ contracts, there is necessarily some uncertainty as to what the VA might require over the course of the performance period. (Medline Reply at 21). While it is true that the MSPV 2.0 solicitation did not bind the VA to purchase supplies in sums-certain, the flexible nature of IDIQ contracts does not exempt procuring agencies from the FAR's requirements to issue an accurate solicitation. *Cf. DZSP 21, LLC v. United States*, 139 Fed. Cl. 110, 117 (2018) ("Cost-reimbursement contracts can afford the government flexibility in appropriate circumstances, but they do not obviate the requirements of [FAR] Section 15.206(a)."). It is unclear to the Court what course the VA will chart next. But it is clear that the VA's requirements changed multiple times since the MSPV 2.0 solicitation was issued. Medline's arguments to the contrary are unavailing.

ii.   Concordance's Scope Claim is timely.

Medline's second argument—that Concordance's Scope Claim is untimely—is interesting given that Medline raises essentially the same claim in its Complaint, although it packages it as a challenge to the scope of corrective action and breach of implied-in-fact contract.[11] Setting aside that Medline's arguments in its Complaint and briefing are contradictory and mutually exclusive, the Court disagrees with the substance of Medline's new timeliness argument. Concordance only became aware of the extent to which any MSPV 2.0 award might be abridged when it received the Administrative Record, or at the very earliest, when the DLA notified VA offerors in March 2021. (Am. Compl. Ex. 9). Medline argues that this is a post-award challenge to the solicitation, and such challenges are waived under *COMINT Sys. Corp. v.*

---

[11] (Medline Compl. at ¶¶ 108, 110 (arguing that the VA's corrective action should address the "significant reduction to the solicited MSPV 2.0 scope of work"), 117, (alleging that "the VA evaluated MSPV proposals with the intent to eliminate portions of the VA MSPV program" in the middle of the performance period), 118 (arguing that "[b]y evaluating proposals without any intent of executing the full work scope, the VA breached its implied contractual obligation to consider Medline's MSPV 2.0 proposal honestly and in good faith, entitling Medline to recover its bid and proposal costs.")).

*United States*, 700 F.3d 1377 (Fed. Cir. 2012) and *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007). (Medline Reply at 22). Medline is incorrect—this is a pre-award challenge for the reasons stated in Section II(B)(i) above. And this is not a situation where Concordance has sat on its rights despite knowing of a defect in the solicitation.

Concordance was constructively aware of the DLA transition not later than September 2020, when the GAO issued its public report. (VA AR 3168–3208). But in March 2021, Concordance was given official notice that the DLA transfer was being accelerated by more than a year. (Am. Compl. Ex. 9). At that time, the base period described in the solicitation had already been running for a year. (*Compare* VA AR 4 (MSPV solicitation describing performance period starting April 1, 2020) *with* Am. Compl. Ex. 9 (Amendment of Solicitation signed March 30, 2021, accelerating the transition timeline)). With that in mind and considering the March 9, 2021 notice, the March 30 acceleration notice effectively turned an already-abridged two-year base period into a one-year base period for VISNs 4, 5, 6, 7, and 8. (VA AR 4; Am. Compl. Exs. 2, 9). Concordance brought its court challenge shortly after the March 9 notice, (Case No. 21-1098, Compl., ECF No. 1 (filed March 22, 2021)), and Concordance sought emergency injunctive relief the day after it became aware that the agency stay had dissolved. (Concordance Mot. for TRO, ECF No. 40-1 (filed April 28); Ex. A (April 27 email from USA Counsel stating "MSPV 2.0 is moving forward.")). In summary, Concordance's Scope Claim is timely.

### iii.   Concordance has demonstrated competitive prejudice.

Now in agreement with the United States, Medline argues that Concordance cannot demonstrate competitive prejudice and therefore lacks standing to challenge the MSPV 2.0 solicitation. "Only an 'interested party' has standing to challenge a contract award." *Digitalis Educ. Sols., Inc. v. United States*, 664 F.3d 1380, 1384 (Fed. Cir. 2012); 28 U.S.C. § 1491(b)(1). "An interested party is an actual or prospective bidder whose direct economic interest would be affected by the award of the contract. Thus, a party must show that it is 1) an actual or prospective bidder and 2) that it has a direct economic interest." *Digitalis Educ. Sols., Inc.*, 664 F.3d at 1384 (internal citation omitted).

The general rule is that to show a direct economic interest, the protestor "is required to establish that it had a 'substantial chance' of receiving the contract" but for the error in the procurement process. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006). However, there are exceptions. The Federal Circuit has recognized that when a prospective bidder is challenging a solicitation before the agency makes an award, often "there is no factual foundation for a 'but for' prejudice analysis." *Weeks Marine*, 575 F.3d at 1361. When that is the case (as it commonly is in pre-award protests), the Court must consider whether the protestor can demonstrate a "non-trivial competitive injury which can be addressed by judicial relief." *Id.* at 1362. But, when an "adequate factual predicate" exists such that the Court can determine whether the protestor had a "substantial chance" to receive the award, the general rule applies. *Orion Tech.*, 704 F.3d at 1349; *see also Oracle Am., Inc. v. United States*, 975 F.3d 1279, 1291 n.3 (Fed. Cir. 2020). Ultimately, "[p]rejudice is a question of fact." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

The United States argues that Concordance has failed to show competitive prejudice necessary to establish that it has standing. (USA xMJAR at 25–26). Medline echoes this

argument in its own briefs. (Medline Reply at 24). The United States expounds on its argument by stating that "Concordance fails to address how it would amend its proposal to ensure a substantial chance of award if VA amended the solicitation." (USA xMJAR at 26). That is incorrect as a factual matter. In a declaration from Jaysen Stevenson, President of the Government Division for Concordance, Concordance states that "[i]n preparing its proposal . . . Concordance relied on the announced scope of the VA MSPV 2.0 solicitation." (Concordance MJAR Ex. A ¶ 9, ECF No. 64-2).[12] Concordance further explains that because the MSPV 2.0 solicitation was tentative, pending the circumstance of the DLA transfer, Concordance was forced to "account for both the planned transition and the possibility" that the transition would not occur. (*Id.* at ¶ 13). Concordance credibly represents that it "would approach a new, rescoped VA MSPV 2.0 solicitation with dramatically different competition and pricing strategies for *all* VISNs—not just the VISNs that are covered by" corrective action. (*Id.* at ¶ 14 (emphasis in original)). These representations clearly go to how Concordance would amend its proposal if the VA were to amend the MSPV 2.0 solicitation.

Not only is the United States' argument factually erroneous, it is also incorrect as a matter of common sense. The record confirms that Concordance was forced to submit its revised proposal during a period when the transition was particularly imminent but known by Concordance to be unlawful. The VA's Notice of Procurement Activity (ECF No. 43-1) shows that on May 4, 2021, the VA requested that Concordance submit its revised price proposals by May 12. On May 4, Concordance had already sought preliminary injunctive relief, and would soon move for emergency injunctive relief. (Mot. for PI (filed April 28); Mot. for TRO (filed May 6)). The United States' concession of error would not come until June 4, 2021. (*See* Tr. of Oral Arg. (held June 4)). In its Motion for Remand, the United States urged the Court to remand all counts of Concordance's Amended Complaint, *including the count that challenges the scope of the MSPV 2.0 solicitation*:

> *All counts* asserted by Medline and Concordance in their pleadings are implicated by the agencies' planned transfer of the VA's MSPV program to DLA. The pleadings . . . *make indirect challenges by virtue of the alleged effects of the planned transfer on VA's MSPV 2.0 procurement* and DLA's existing MSPV contracts. The agencies intend to reconsider the planned transfer in light of these allegations and the lack of analysis in the record to support the planned transfer to DLA.

(USA Mot. for Remand at 2, ECF No. 74 (emphasis added)). This request shows that the United States recognized the intimate nexus between the status and timeline of the transfer and the scope of the MSPV 2.0 procurement. Notably, it took several days after that hearing for the United States to even commit that the transfer had been cancelled. (USA xMJAR at 37 (filed June 4)); *but see Owens & Minor Distribution*, No. 21-1341, 2021 WL 2549413, at *3 ("Conspicuously

---

[12] Declarations from company executives, although not generally part of the Administrative Record, are appropriate vehicles for protestors to demonstrate competitive prejudice. *Strategic Analysis, Inc. v. U.S. Dep't of Navy*, 939 F. Supp. 18, 23 n.7 (D.D.C. 1996); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1564 (Fed. Cir. 1996); *Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 272 *modified,* 63 Fed. Cl. 141 (2004).

absent in [the] declarations from VA and the DLA officials is a statement regarding the current status of the transfer. Is it indeed 'cancelled?' The Court is left with some uncertainty.").

The United States does not attempt to argue that the nexus between the scope of MSPV 2.0 and the transfer to DLA did not affect price; it only argues that uncertainties and surprise changes to price are "endemic to IDIQ solicitations[.]" (USA xMJAR at 27). But, as explained above, while protestors are expected to bear some uncertainty in pricing IDIQ contract proposals, the performance period and delivery date are key to assessing those uncertainties and thus proposal pricing analysis. *See MSC Indus. Direct Co.*, 126 Fed. Cl. at 533 ("A discrepancy as significant as the delivery date is more than sufficient to warrant an amendment to the solicitation.").

"[P]rejudice cannot be assessed in a vacuum, but must be considered in light of all the changes the [agency] would have to consider upon reevaluation." *DZSP 21, LLC v. United States*, 137 Fed. Cl. 38, 47 (2018). The VA failed to amend or resolicit its MSPV 2.0 requirements to reflect the current status and timeline of the transfer to DLA. In light of all the circumstances, Concordance has made a strong showing that the VA inflicted on Concordance a non-trivial competitive injury. Concordance sufficiently pled the illegality of the transfer plan that the United States abandoned its defense on the merits and advocated for a remand to reconsider both the transfer and the scope of the MSPV 2.0 solicitation together. Given the uncertainty surrounding the status of the procurement, the Court lacks the factual predicate necessary to comprehensively evaluate whether Concordance did or did not have a substantial chance at an award. In sum, Concordance was forced to submit revised proposals for an MSPV 2.0 solicitation while the status of the transfer was in limbo. That uncertainty affected its pricing proposals for MSPV 2.0 components. At the very least, an amendment was needed to clarify the delivery dates and performance period, and the VA's failure to take that minimum step was a violation of FAR § 15.206.

*C. The protestors, Concordance and Medline, are entitled to relief.*

Although the United States believes declaratory relief offers adequate reprieve, the Court finds that Medline and Concordance have demonstrated entitlement to a narrow injunction that removes any doubt as to what the VA is barred from doing next. A party seeking an injunction must demonstrate (1) success on the merits; (2) irreparable harm absent an injunction; (3) the balance of hardships favors an injunction; and (4) that an injunction is in the public interest. *PGBA, LLC v. United States*, 389 F.3d 1219, 1229 (Fed. Cir. 2004). This Court has broad authority to order injunctive relief in the context of bid protests. *See* 28 U.S.C. § 1491(b); *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011). Though no single factor is dispositive, "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). The trial court's decision to grant or deny an injunction is reviewed for abuse of discretion. *Asociacion Colombiana de Exportadores de Flores v. United States*, 916 F.2d 1571, 1578 (Fed. Cir. 1990).

Medline and Concordance have both demonstrated success on the merits. Under the APA, if the reviewing court finds that agency action is arbitrary, capricious, or unsupported by the administrative record, the court must "hold unlawful and set aside [that] agency action[.]" 5

U.S.C. § 706. The United States has conceded that the VA's actions here are unsupported by the administrative record. (Tr. of Oral Arg. at 19:10–25).

Medline and Concordance further demonstrated that absent an injunction, they each will suffer irreparable harm. "The Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (collecting cases). Medline and Concordance were deprived of the opportunity to fairly compete for the VA's MSPV requirements when those requirements were noncompetitively transferred to the DLA. Thus, both protestors have demonstrated that they will suffer irreparable harm.

The balance of harms also favors an injunction of both the transfer and the MSPV 2.0 award. Although an injunction that requires the VA and DLA to change course might "cost the government some money and effort," that inconvenience must be tolerated, so long as the injunction "will not completely disrupt the procurement process." *Cardinal Maint. Serv., Inc. v. United States*, 63 Fed. Cl. 98, 110 (2004). On the other hand, absent an injunction, Concordance and Medline would be shut out from bidding on the VA's MSPV requirements if procured through DLA's Gen V contracts. Consequently, "in light of the large size of the contract, and the fact that the plaintiff will be prohibited from bidding on the contract in the absence of an injunction," Medline and Concordance "will suffer more harm if the court fails to grant an injunction than the government will suffer if the court does grant an injunction." *See id*. With respect to Concordance's Scope Claim, the United States cannot show harm because it continues to service its MSPV requirements through the MSPV-NG bridge contracts. (VA AR 3173–75, 3371–72); *DZSP 21, LLC*, 139 Fed. Cl. at 122 ("[A]lthough single-sourced bridge contracts may cost the government more than a competitive contract would, the marginal cost to the government does not outweigh the potential cost of long-term harm from allowing a flawed contractual award to take effect.").

Finally, the public interest favors an injunction. "The public also has a strong interest in preserving the integrity of the procurement process." *Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 223 (2010), *appeal dismissed,* 462 F. App'x 970 (Fed. Cir. 2012). That interest would be undermined if the Court were to deny injunctive relief and allow the VA's actions here to stand. Although the United States makes vague references that an injunction might impede the medical care provided to veterans, (USA xMJAR at 19, 29), these assertions are not credible. Despite ample opportunity to do so, the United States adduces no evidence to support such a claim. The United States admits it is procuring its requirements through bridge contracts and cites no reason, other than costs, why it cannot continue to do so. The transfer lacks a rational basis, and the current MSPV 2.0 solicitation violates the law. Therefore, injunctive relief is warranted.

An important question remains as to the appropriate scope of injunctive relief. With respect to the transfer of VA MSPV requirements to the DLA, the Court reiterates that a narrow injunction is most appropriate. On this record, this transfer plan must be enjoined. The United States seeks a carve-out for VISNs 6 and 20. (USA Reply at 8, 9–14, ECF No. 94). Aside from its competitive prejudice arguments, which the Court has already addressed with respect to

Concordance, the United States does not cite the Court to a basis in law[13] or fact for these carve-outs, other than its bald contention that "any permanent injunction should be narrowly-tailored to the planned transfer on this administrative record, and exclude the transfers of VISN 20 and VISN 6." (*Id.* at 14). Medline does not contest a carve-out for VISN 20, but Concordance does. (Medline Reply at 15–16, n.4; Concordance Reply at 8, ECF No. 91). However, Concordance did not bid for VISN 20. (VA AR 993 *et seq.*). And VISN 20 was an optional CLIN, distinct from the remainder of the MSPV 2.0 solicitation as it was part of the pilot for the transfer to DLA. (VA AR 216). It is difficult to see how any of the factors the Court discussed supporting Concordance's competitive prejudice for the rest of MSPV 2.0 apply to VISN 20. Therefore, a carve-out for VISN 20 is appropriate.

Medline resists a carve-out for VISN 6, arguing that an injunction preventing the transfer is appropriate and should be comprehensive. (Medline Reply at 14). Concordance also resists a carve-out for VISN 6 by broadly arguing that "the VA MSPV 2.0 Solicitation is a *unitary* solicitation[.]" (Concordance Reply at 11 n.16). The import of this, Concordance argues, is that whether or not the transfer to DLA is enjoined, "the entire [MSPV 2.0] solicitation must be amended and [the VA must seek] revised proposals . . . for all services." (*Id.*).

The Court need not decide whether this is a "unitary solicitation." It has already declared the transfer unlawful on this administrative record. It has also declared that the MSPV 2.0 solicitation, in its entirety, does not comply with federal procurement law. The United States cites no case that supports siloing VISN 6. Therefore, VISN 6 is included within the scope of the Court's injunction. VISN 20 is inherently different, as its association with DLA predated the VA's issuance of the MSPV 2.0 solicitation.

The Court is mindful that "[a]n injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Indeed, the Supreme Court has indicated that if a "less drastic remedy" is sufficient to provide redress, trial courts should abstain from issuing injunctive relief. *Id.* However, as the Court has noted, the VA has demonstrated its determination to forge ahead with this transfer despite numerous red flags from agency professionals, a mysterious and disturbing resistance to acknowledging error, and its indifference to its own counsel's admissions that the agency's actions lack support in the Administrative Record as evidenced by the continued attempt to transfer VISN 6. In addition, to the Court's knowledge, and as Concordance notes, the VA and DLA have not rescinded their interagency agreements or memoranda of understanding regarding the transfer, neither have they taken any other steps to halt progress on a transfer. (Concordance Reply at 7). In light of this, the Court is left with no assurances that a light-touch remedy would be "sufficient to redress [the protestors'] injury." *Monsanto Co.*, 561 U.S. at 165.

---

[13] Earlier in this litigation, the United States promised that it would provide a case to support its position should one exist. During the May 21, 2021 Oral Argument, the Court asked for a case that supported separating a solicitation into its VISNs and allowing protestors to seek an injunction of some, but not all awards. (Case No. 21-1098, Tr. of May 21 Oral Arg., at 18–19, ECF No. 45). The United States admitted that it had not yet identified one but committed that it "would certainly include it in [its] merits briefing[.]" (*Id.*). It has not done so.

Therefore, the Court finds that permanent injunctions preventing a transfer on the current record and enjoining an award under the current MSPV 2.0 solicitation to be the only sufficient remedies.

### D.  Concordance is entitled to recover bid preparation and proposal costs.

In its opening merits brief, Concordance alleged that the VA breached its implied-in-fact contract with Concordance by issuing the MSPV 2.0 solicitation despite the VA's undisclosed plan to truncate the scope of performance. (Concordance MJAR at 35). The United States failed to respond to this allegation in its Response and Cross-MJAR, thus has waived its arguments on the issue. Likewise, though raised in its Complaint, Medline's MJAR failed to mention bid proposal costs, thus Medline has waived that issue.

The Court of Federal Claims has jurisdiction over implied-in-fact contract claims brought in bid protests. *Safeguard Base Operations, LLC v. United States*, 989 F.3d 1326, 1342 (Fed. Cir. 2021) (citing 28 U.S.C. § 1491(b)(1)). In addition to its powers to issue injunctive relief, the Court may award "bid preparation and proposal costs" should it find the United States in breach. 28 U.S.C. §1491(b)(2). The United States breaches this implied contract if the Court finds the United States' "consideration of offers is . . . arbitrary and capricious toward the bidder-claimant." *Cent. Arkansas Maint., Inc. v. United States*, 68 F.3d 1338, 1341 (Fed. Cir. 1995) (internal quotations omitted).

"Under the 'arbitrary and capricious' standard[,] the scope of review is a narrow one. A reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974) (internal quotations omitted). The Court may not substitute its own judgment for that of the agency. *Id*. But the agency must articulate a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

Concordance argues that the VA acted arbitrarily and capriciously by proceeding with the MSPV 2.0 solicitation over the objections and ethical concerns of VA employees. (Concordance MJAR at 35–37). On the Court's review, the record reflects a clear error of judgment on the part of the VA.[14]

As noted above, Section I(B) *supra*, in early May 2019, VA's Executive Director of Procurement noted his concerns to the Associate Executive Director of the VA's Strategic Acquisition Center regarding the scope issue, the flawed process proposed by the VA, and the prediction, now proven accurate, that the VA's plan could not withstand court scrutiny. (VA AR 3490). In the summer of 2020, when informed that it would be receiving a substantial portion of work previously awarded under a VA contract, "Cardinal was flabbergasted[,]" according to DLA employees. (DLA AR 3721). By the end of 2020, the VA had already made plans to cancel MSPV 2.0 contracts. (VA AR 1617). In February 2021, VA had planned to cancel MSPV 2.0 "as

---

[14] As noted in footnote 6, *supra*, the record is replete with warnings from agency officials. The Court favors brevity.

soon as possible to avoid compounding terminations costs" because a "[t]ransition [from MSPV-NG] to [MSPV] 2.0 and then again to DLA is too much churn." (VA AR 1955). Nevertheless, the VA has proceeded with the MSPV 2.0 program.

In addition to practical concerns, the record shows that agency officials raised ethical concerns which, apparently, were not heeded. For example, the DLA reported that the VA's Strategic Acquisition Center "communicated that due to ethical concerns, [MSPV 2.0] contracts cannot be awarded if VA knowingly plans to transition to DLA in the near term[.]" (DLA AR 5197, 5205, 5209). These concerns were shared by DLA procurement officials and dated back to at least September of 2020, *before* the VA made initial MSPV 2.0 awards. (DLA AR 5217; VA AR 1527–31).

Even in its Reply, the United States has not pointed to any portion of the record that resolves these practical and ethical concerns. (USA Reply at 16–18). The Court is left to conclude that the VA's decision—proceeding with MSPV 2.0 despite the transfer plan—was arbitrary and capricious. Consequently, Concordance is entitled to judgment on its implied-in-fact contract claim and therefore is entitled to recover the costs of its bid preparation and proposal. Further proceedings may be required for quantum.

### III.   Conclusion

The VA's decision to transfer its MSPV requirements to the DLA is unsupported by the Administrative Record and must be declared unlawful and set aside under the APA. Additionally, the VA's MSPV 2.0 Solicitation does not reflect the current needs of the agency, warranting the declaratory and injunctive relief described in this Opinion. Finally, the VA breached its implied-in-fact contract with Concordance to consider Concordance's offer fairly, honestly, and in good faith. Despite the Court's criticisms of the merits of arguments sometimes advanced by counsel, all counsel to this action have performed admirably in navigating the challenges presented by this complex procurement dispute.

In summary, consistent with the body of this Opinion, the Court **ORDERS**[15] the following:

> (1)   Medline's Motion for Judgment on the Administrative Record, ECF No. 63-1, is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Clerk is directed to enter judgment for Medline.
>
> (2)   Concordance's Motion for Judgment on the Administrative Record, ECF No. 64-1, is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Clerk is directed to enter judgment for Concordance.
>
> (3)   The United States' Cross-Motion for Judgment on the Administrative Record, ECF No. 84, is **DENIED**.

---

[15] On July 27, 2021, the Court issued an order awarding injunctive relief. This Opinion replaces, controls, and supersedes that Order to the extent the parties understand there to be any conflict.

(4)     Cardinal's Cross-Motion for Judgment on the Administrative Record, ECF No. 83, is **DENIED**.

(5)     The United States' Motion for Clarification, ECF No. 98, is **DENIED AS MOOT**.

(6)     The Department of Veterans Affairs' plan to transfer its Medical Surgical Prime Vendor requirements to the Defense Logistics Agency is **DECLARED UNLAWFUL** as reflected in this Administrative Record.

(7)     The Department of Veterans Affairs is **PERMANENTLY ENJOINED** from transferring its Medical/Surgical Prime Vendor ("MSPV") Program to the Defense Logistics Agency based on the Administrative Record presented to the Court.

(8)     The Defense Logistics Agency is **PERMANENTLY ENJOINED** from procuring the medical and surgical requirements encompassed within the Department of Veterans Affairs' MSPV 2.0 program with the exception of those facilities encompassed within the Department of Veterans Affairs' Pilot Program.

(9)     The Department of Veterans Affairs' procurement under Solicitation Number 36C10G-19-R-0050 (MSPV 2.0) is **DECLARED UNLAWFUL** in its entirety as that solicitation does not reflect the current needs of the Agency.

(10)    Any Notice to Proceed issued pursuant to Solicitation Number 36C10G-19-R-0050 (MSPV 2.0) is **DECLARED UNLAWFUL** with the exception of any Notice pertaining to those facilities encompassed within the Department of Veterans Affairs' Pilot Program.

(11)    The Department of Veterans Affairs is **PERMANENTLY ENJOINED** from issuing awards under Solicitation Number 36C10G-19-R-0050 (MSPV 2.0) in its current form.

(12)    The Department of Veterans Affairs is **PERMANENTLY ENJOINED** from issuing any Notice to Proceed under Solicitation Number 36C10G-19-R-0050 (MSPV 2.0) in its current form.

(13)    Concordance is entitled to judgment on its implied-in-fact contract claim and therefore is entitled to recover the costs of its bid preparation and proposal.

(14)    This Opinion will issue under seal. No later than August 12, 2021, the parties are **ORDERED** to submit a joint notice of proposed redactions. A public version of this Opinion will follow those redactions.

(15)  On or before August 12, 2021, the parties are **ORDERED** to file a joint status report advising the Court if further proceedings are necessary in this matter, including but not limited to, quantum of costs Medline and Concordance are entitled to recover.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge